IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DARLENE COUNTERMAN                                                PLAINTIFF

        v.        Civil No. 05-3052

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff Darlene Counterman brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income benefits (SSI) pursuant to § 1602 of Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1381a. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## Procedural and Factual Background

The plaintiff filed her application for SSI on July 22, 2002, alleging an onset date of June 1, 2002. (Tr. 59.) The application was initially denied (Tr. 30) and that denial was upheld upon reconsideration (Tr. 32). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 95.)

On June 25, 2003, a hearing was held by the ALJ. The plaintiff was represented by counsel at this hearing. (Tr. 281-295.) The ALJ issued an unfavorable ruling on December 9, 2003, deciding that the plaintiff was not disabled within the meaning of the Act. (Tr. 170-181.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 183), which granted that request and vacated the ALJ's decision (Tr. 186). In remand, the ALJ was directed

to (1) obtain additional evidence concerning Counterman's mental impairments, (2) further evaluate Counterman's mental impairments in accordance with the special technique described in 20 C.F.R. § 416.920a, (3) give further consideration to the claimant's maximum residual functional capacity (RFC) during the entire period at hiss and provide rationale with specific references to evidence of record in support of assessed limitations, (4) obtain evidence from a medical expert to clarify the nature and severity of Counterman's mental impairments, (5) obtain evidence from a vocational expert to clarify the effect the assessed limitations of the claimant's occupational base, and (6) determine whether drug addiction and alcoholism are contributing factors material to the finding of disability. (Tr. 187-189.)

On November 17, 2004, a second hearing was conducted by a different ALJ. Again, plaintiff was represented by counsel at this hearing. (Tr. 296-311.) The ALJ issued an unfavorable ruling on April 22, 2005, deciding that plaintiff was not disabled within the meaning of the Act. (Tr. 10-25.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 8), which denied that request (Tr. 4-6); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on August 31, 2005, seeking judicial review of that decision. (Doc. 1.) On the Commissioner has filed an appeal brief with the court. (Doc. 8.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 5.)

At her first hearing, Counterman testified that she was not presently working, and that the longest time she had ever held a job was a couple of months. She stated that back pain, depression, and emotional problems prevented her from working. At the time of this hearing, plaintiff was living off of child support and food stamps. She was living with her two daughters,

a boyfriend, and his daughter. Although she was responsible for the children, who were between the ages of six and nine at the time of the first hearing, plaintiff testified that the children "more or less" cared for themselves. At that first hearing, plaintiff was not taking any prescription medications. Plaintiff testified that her boyfriend did most of the grocery shopping and that she would help him and the children prepare meals. For entertainment, plaintiff stated that she would watch television or listen to the radio. (Tr. 283-286.) Plaintiff testified that she had attempted suicide on several occasions, that she suffers from nightmares, and that she has been terminated from jobs because of disorderly conduct. (Tr. 288-289.) Plaintiff stated that she fell out of a tree at the age of twelve, and that she has had some back problems since then. (Tr. 290.) Counterman testified that when she is around others, her legs begin shaking, her throat feels dry, her hands shake, and she cannot concentrate. When that happens, she secludes herself and drinks beer to calm down. She believes she is addicted to alcohol. (Tr. 291-292.)

Counterman's boyfriend, Eric Fay, testified that Counterman avoided social situations and was frequently forgetful of tasks such as turning off appliances or caring for pets. (Tr. 287.) ,

At the time of her remand hearing, plaintiff was 34 years of age. (Tr. 300.) She testified that she had completed eighth grade and started ninth grade. She tried to complete her GED, but has not been successful. (Tr. 300, 301.) Past work included that as a housekeeper and as a plastics company. (Tr. 300, 301.) Plaintiff testified that when she was younger, she fell out of a tree, injuring her back. Her mother took her to a chiropractor. As a teenager, plaintiff had emotional problems that led to her placement in a psychiatric unit when she was sixteen. When she was older, she was involved in abusive relationships (Tr. 302.) When asked what physical difficulties would prevent her from working, she testified that migraines were her biggest

-3-

obstacle, which she claimed occurs a couple of times a week. Counterman claimed, however, that if she takes medicine, the migraines end within twenty minutes. (Tr. 303.) Counterman also testified that she has back pain that is periodic and is often caused by standing for "a long time." (Tr. 304.)

Counterman testified that she suffers from anxiety, and that some doctors had suggested that she might suffer from bi-polar disorder. Plaintiff stated that she had an alcohol problem, but that at the time of the hearing, she was six months sober. Despite that, plaintiff claimed that she still suffered from depression. (Tr. 305.) Plaintiff testified that she had been sexually abused by a stepfather, which caused post-traumatic stress disorder. (Tr. 306.) Plaintiff also testified about having some sleeping problems and about forgetfulness. (Tr. 307-311.)

The ALJ found that plaintiff had no severe exertional impairments, and thus had the RFC to perform heavy work. The ALJ also found that plaintiff had some non-exertional impairments, resulting in a limited but satisfactory ability to follow work rules; relate to coworkers; interact with supervisors; and understand, remember, and carry out detailed instructions. Plaintiff's ability to deal with public/use judgment; deal with work stresses; function independently; maintain attention and concentration; understand, remember, and carry out complex instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability was seriously limited but not precluded. As plaintiff had no past relevant work to consider, the ALJ determined that, in light of her younger age, plaintiff could make the vocational adjustment to work that exists in significant numbers in the national economy, including kitchen helper, kitchen assembler, and packing and packagers hand. As the ALJ determined that plaintiff was not under a disability, no determination was made about whether

alcohol or drug abuse was a contributing factor. (Tr. 24-25.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for

at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

Plaintiff alleges that she is disabled due to both exertional and non-exertional impairments. She claims that she suffers from the exertional impairment of back pain and the non-exertional impairments of depression, anxiety, and migraine headaches.

Although there has been ample time for plaintiff's counsel to submit a brief to this court, he has not done so. Therefore, the Court was presented with no argument in support of Plaintiff's request for reversal of the Commissioner's decision. Nonetheless, as always, the court has thoroughly reviewed the administrative record in the course of conducting this judicial review.

Concerning her claims of back pain, the record is devoid of any medical evidence that supports her contention of disabling back pain. At the state agency's request, plaintiff was

examined by Dr. K. Simon Abraham for a general physical examination. (Tr. 124-131.) Plaintiff reported to Dr. Abraham that she had fallen out of a tree when she was twelve and that she saw a chiropractor for two years between the ages of twelve and fourteen, but had not sought any medical treatment since that time. Dr. Abraham found that plaintiff was a very healthy and fit person who did not walk with difficulty or appear to be in pain. An X-ray of plaintiff's spine was performed, and that X-ray did not reveal any abnormalities. In fact, Dr. Abraham found that plaintiff had no physical limitations whatsoever. In light of this evidence, the ALJ did not err in finding that plaintiff's alleged back pain was not a severe exertional impairment and thus has the capacity to perform the exertional requirements of even heavy work.

Also, plaintiff states that she suffers from migraine headaches, a non-exertional condition. At her second hearing, plaintiff testified that she had migraine headaches a couple of times a week, but that the headaches were treatable with medication. (Tr. 303.) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999). The medical evidence shows that plaintiff's headaches were treated with Allegra for sinusitis in September 2000. While plaintiff indicated in May 2004 that her headaches were not responding to over-the-counter medications as well as previously, there is no evidence that she is receiving narcotic medication for the headaches, nor is there any neurological evidence in the record to support plaintiff's complaints of migraine headaches. Therefore, the ALJ did not err in finding this alleged non-exertional impairment was not disabling.

Plaintiff contends that she also suffers the non-exertional conditions of depression and anxiety. She was evaluated by Vann Arthur Smith, Ph.D. on April 18, 2003, at the request of

her attorney. Dr. Smith opined that plaintiff was seriously limited, but not precluded, in her abilities to remember work-like procedures; understand, remember, and carry out short and simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; be aware of normal hazards and take appropriate precautions; set realistic goals or make plans independently of others; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and use public transportation. (Tr. 153-154.) Dr. Smith also determined that plaintiff was unable to meet competitive standards in her ability to maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember, and carry out detailed instructions; and deal with the stress of semi-skilled and skilled work. (Tr. 153-154.) Dr. Smith added that plaintiff's abuse of alcohol does exacerbate her psychological conditions. (Tr. 155.) Dr. Smith diagnosed plaintiff with diffuse, bilateral organic brain dysfunction of moderate severity and slowly progressive velocity. He opined that plaintiff was disabled. (Tr. 149.)

On August 26, 2003, plaintiff was examined by Dr. Robert E. Billingsley, M.D., for a consultative medical examination, at the request of the state disability determination agency. Dr. Billingsley noted plaintiff's diagnosis from Dr. Smith of organic brain dysfunction, but opined

that the most crucial part of her history was the fact that plaintiff consumed three cases of beer per week over the past three years and had been drinking heavily since the age of fifteen. Plaintiff reported to Dr. Billingsley that she had been in a treatment program for six weeks and that was feeling much better since she was substance free. (Tr. 156-157.) Dr. Billingsley estimated plaintiff's IQ at 80 or better; a GAF of 61, with some mild symptoms of social uncertainty. (Tr. 159-160.) Dr. Billingsley opined that plaintiff's other psychiatric symptoms of depression, anxiety, cognitive difficulties, and emotional and behavioral liability were "best explained by the patient's alcohol dependence. With further sobriety, it may be that some of those symptoms may still be apparent and be indicative of an underlying psychiatric disorder. However, at this stage of the patient's recovery, it would appear the most likely explanation for all of her psychiatric sympomatology was her alcohol dependence." (Tr. 162.)

On July 20, 2004, plaintiff was seen by Sam Boyd, Ph.D., for a consultative psychological evaluation with mental status examination at the request of the state disability determination agency. (Tr. 247-256.) Plaintiff reported to Dr. Boyd that she had been in an inpatient rehabilitation program for alcohol abuse and depression since May 5, 2004, and that she was scheduled for discharge on in September 2004. Plaintiff had a Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) verbal I.Q. score of 77, a performance score of 73, and a full-scale IQ score of 73. Dr. Boyd opined that plaintiff had a good ability[1] to understand, remember, and carry out simple job instructions; and maintain personal appearance. According

---

[1] A good ability is defined as "ability to function in this area is more than satisfactory." (Tr. 255.)

-9-

to Dr. Boyd, plaintiff had a fair ability[2] to follow work rules; relate to coworkers; interact with supervisors; and understand, remember, and carry out detailed job instructions. Finally, Dr. Boyd stated that plaintiff had a poor ability[3] to deal with the public; use judgment; deal with work stress; function independently; maintain attention and concentration; understand, remember, and carry out complex job instructions; demonstrate reliability; relate predicably in social situations; and behave in an emotionally stable manner.

Based on this somewhat contradictory psychological evidence, the ALJ did not err in concluding that plaintiff had the RFC to perform work in accordance with the opinions of Dr. Boyd, which the ALJ found to be slightly more restrictive than that determined by Dr. Billingsley. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir. 1989). On that RFC, a vocation expert stated that plaintiff could perform jobs such as a kitchen helper (with 410 such jobs in the local economy, 3,300 such jobs in Arkansas, and 488.000 such jobs in the national economy), a kitchen assembler (with 3,600 such jobs in the local economy, 18,000 such jobs in Arkansas, and 1,000,000,000 such jobs in the nation economy), and a packing and packagers hand (with 780 such jobs in the local economy, 7,700 such jobs in Arkansas, and 951,000 such jobs in the national economy). (Tr. 232-233.)

Although the plaintiff failed to file an appeal brief, after review of the ALJ's decision and

---

[2] A fair ability is defined as "ability to function in this area is limited but satisfactory." (Tr. 255.)

[3] A poor ability is defined as "ability to function in this area is seriously limited but not precluded." (Tr. 255.)

AO72A
(Rev. 8/82)

the medical evidence presented below, we find there is substantial evidence such that a reasonable mind would find it adequate to support the Commissioner's conclusion.

**Conclusion:**

Accordingly, we conclude that the decision of the ALJ herein, denying benefits to the Plaintiff, is supported by substantial evidence of record, and should be affirmed.

DATED this 13th day of September 2006.

                                            **/s/ Beverly Stites Jones**
                                       _____
                                       HON. BEVERLY STITES JONES
                                       UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)